UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11813-RGS

PAULINE MONAST

v.

JOHNSON & JOHNSON,
THE PENSION COMMITTEE OF JOHNSON & JOHNSON,
and REED GROUP

MEMORANDUM AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

January 22, 2010

STEARNS, D.J.

Plaintiff Pauline Monast brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, seeking non-income, long-term disability (LTD) benefits[1] from defendant Johnson & Johnson.[2] Cross-motions for summary judgment were filed on October 2, 2009. A hearing on the motions was held on December 7, 2009.

BACKGROUND

The relevant facts are undisputed. Monast was hired on July 30, 2001, by Codman & Shurtleff, Inc., a medical device provider acquired by Johnson & Johnson. Monast began

---

[1]Monast already receives the maximum LTD income benefit possible through Social Security Disability Insurance (SSDI) and workers' compensation. This claim specifically seeks additional employment-related benefits associated with the LTD plan that Monast would have been eligible for: namely, health insurance for herself and her spouse, life insurance for herself and her spouse, accident insurance for herself and her spouse, and the right to accrue pension benefits.

[2]Johnson & Johnson is the plan sponsor. The Pension Committee is the plan administrator. Reed Group is the third-party disability claims administrator of the plan.

experiencing pain in both hands in 2006.  She was later diagnosed with carpal tunnel syndrome.  Her ailment was "related to repetitive activity at work while working as a Document Management Specialist."  Pl.'s Mem. in Supp. at ¶ 4.[3]  She was placed on short term disability (STD) leave on April 2, 2007.

Towards the end of September of 2007, Monast's STD benefits were about to expire.  She filed an application for LTD benefits with Johnson & Johnson.  The application was processed by Reed Group and approved as of October 1, 2007.  In a letter dated October 18, 2007, Reed Group warned Monast that her LTD benefits would "cease" if she "[f]ail[ed] to cooperate with Reed Group, including but not limited to . . . fail[ure] to provide proof of disability acceptable to Reed Group."  Pl. Ex. P12, at 1.  The cooperation requirement was explained in the letter as follows.

> In order to remain eligible for [LTD] benefits you must be under the regular care of a licensed health care provider, adhere to an approved treatment plan and provide continued medical evidence of your disability.  You must also cooperate in the medical evaluation process, including submitting to a medical exam and providing documentation, etc. as requested by Reed Group.

Id. at 2.  The consequences of a failure to cooperate were also laid out.

> Please be aware that a violation of any Plan rules and regulations . . . will represent a basis for terminating your monthly LTD Plan benefits and any other Johnson & Johnson benefit plan for which you may be eligible at the sole discretion of the Plan administrator or its authorized representative.  If this were to occur, you would no longer be considered to be disabled or totally disabled as defined by the Johnson & Johnson [LTD] Plan regardless of your actual health condition.

Id. at 3.

---

[3]The paragraph numbering corresponds to the "Statement of Facts" section in Plaintiff's Memorandum in Support.

On January 10, 2008, Reed Group sent Attending Physician Statement forms to Monast and her treating physician, Dr. David Boland. The purpose of the Attending Physician Statement was to "properly evaluate [Monast's] eligibility for continued disability benefits." Pl. Ex. P14 at 1. Monast was also asked to submit contact information for any of her other treating physicians, as well as the authorization needed for Reed Group to contact them. In addition, Reed Group requested office notes, chart notes, and the results of any medical tests completed during the preceding year. Reed Group stated that the forms and medical documentation were due no later than thirty days from the date of the transmittals and that a failure to respond would result in the termination of Monast's LTD benefits.[4]

On January 18, 2008, Monast's attorney sent the Attending Physician Statement form to Dr. Boland.[5] That same day, he mailed and faxed the physician contact and authorization form to Reed Group and stated that he would forward Dr. Boland's completed Attending Physician Statement as soon as it was received. Dr. Boland faxed the form to Monast's attorney on January 30, 2008, but it was illegible. The attorney requested Dr. Boland's office to forward the original to his office. Monast's attorney received the original in reply, but he "inadvertently" failed to forward it to Reed Group. Pl.'s Mem. in Supp. at

---

[4] The language in the letters to Monast and Dr. Boland differed somewhat in emphasis with respect to the warning. The letter to Dr. Boland stated: "This information must be received within thirty (30) days of the date of this letter to ensure your patient's Long Term Disability benefits are not *placed in jeopardy*." Pl. Ex. P14 at 1 (emphasis added). The letter to Monast more emphatically stated: "If this information is not received [within 30 days from the date of this letter], your LTD benefits *will be terminated* . . . ." Pl. Ex. P15 at 1 (emphasis added).

[5] Monast's attorney during the events leading to this lawsuit also represents her in the present proceeding.

¶ 20.

After having received an incomplete response to its January 10, 2008 request, Reed Group terminated Monast's LTD benefits in a letter dated February 20, 2008. The letter stated: "you are no longer eligible to receive benefits under the [LTD] Plan as you have not provided proof that you are 'disabled' as defined by the provisions of your employer's [LTD] plan."

Monast appealed Reed Group's decision in a letter dated March 5, 2008, enclosing a copy of Dr. Boland's completed Attending Physician Statement dated January 30, 2008. The appeal was denied in a letter from Reed Group dated March 25, 2008. A second appeal was filed on Monast's behalf on April 9, 2008. In the second appeal, Monast's attorney explained that he had requested Dr. Boland to mail the original back to him "as quickly as possible. The original was received several weeks later and unfortunately and inadvertently was not sent to Reed Group at that time." Pl. Ex. P20. The second appeal was denied by Johnson & Johnson on May 22, 2008. The denial cited language in the LTD plan that:

> [n]otwithstanding any other provision of this Plan, in no event shall a Participant be considered Totally Disabled or remain Totally Disabled for purposes of this Plan, and no benefits under this Plan shall be payable: on or after the date a Participant fails or refuses to provide medical certification or other proof within 15 days of receipt of a written request from the Plan Administrator or Claims Service Organization for proof that he/she continues to be Totally Disabled . . . .[6]

Pl. Ex. P23, quoting LTD plan at 14-15. The letter also stated that the second appeal was the final administrative step available to Monast and that any further recourse would have

---

[6]Though the LTD plan only required that a participant be given fifteen days to respond to a request, Monast was given thirty days in the January 10, 2008 letter.

4

to be taken under ERISA.[7]  This action followed.

## DISCUSSION

A motion for summary judgment is the procedural vehicle by which the denial of a benefits claim is tested under ERISA.  See Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).  Summary judgment is, however, a misnomer as a "trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon, Co., 315 F.3d 11, 18 (1st Cir. 2002).  Because summary judgment is simply a procedural vehicle for deciding the issue of disability, "the non-moving party is not entitled to the usual inferences in its favor."  Orndorf, 404 F.3d at 517.

*De novo* review is the default standard for ERISA claims "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Absent a grant of discretion, no deference is given to the administrator's interpretation of the plan language.  See Orndorf, 404 F.3d at 517.  If the plan administrator is granted such authority, an "arbitrary and capricious" standard of review applies.  See Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997).  Here, all parties agree that the "arbitrary and capricious" standard governs.  Pl.'s Mem. in Supp. at 6; Defs.' Mem. in Supp. at 3.

---

[7]"A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1).

Under the arbitrary and capricious standard, the decision of the plan administrator will be upheld even where contrary evidence might suggest a different result, so long as the decision "is plausible in light of the record as a whole, . . . or, put another way, whether the decision is supported by substantial evidence in the record." Leahy, 315 F.3d at 17 (internal citations omitted). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the administrator] had substantial evidentiary grounds for a reasonable decision in its favor." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (citations omitted). See also Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001) ("[T]he existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary."). "It is the responsibility of the administrator [and not the court] to weigh conflicting evidence." Id. at 32. On the other hand, an administrator's faulty reasoning and mischaracterization of the evidence will not survive "arbitrary and capricious" review simply because isolated evidence in the record might support the administrator's decision. Buffonge v. Prudential Ins. Co. of America, 426 F.3d 20, 30-31 (1st Cir. 2005).

<u>Strict Enforcement of the Plan</u>

This case involves the propriety of the strict enforcement of an LTD plan's provisions. "A *primary* purpose of ERISA is to ensure the integrity and primacy of the written plans . . . . Against this plain legislative purpose, if the ERISA plan expressly provides that its members are obligated to [act], we do not think it can be considered 'unfair' to require plan members to abide by the agreement." Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 279 (1st Cir. 2000) (citations omitted) (emphasis in

original).  Monast argues that the denial of her appeal for LTD benefits should be reversed because the LTD plan and the January 10, 2008 letter "set forth arbitrary, restrictively short deadlines with no allowance for any exception or extenuating circumstance."  Pl.'s Mem. in Supp. at 7.[8]

It is undisputed that the plan provided a fifteen-day deadline for a response to a request for proof of continued disability.  Nor is it disputed that Monast was given twice as much time in Reed Group's January 10, 2008 letter.  Lastly, it is undisputed that Monast was warned on three occasions that a failure to timely respond to a request for proof of disability could result in a termination of her benefits.  The warnings were given: (1) when she joined the plan and agreed to its terms; (2) when she was awarded LTD benefits in the October 18, 2007 letter; and (3) when she was asked to provide proof of continuing disability in the January 10, 2008 letter.

The denial of late applications for LTD benefits has been found by a number of courts not to be arbitrary and capricious.  See, e.g., Hunter v. Lockheed Martin Corp., 73 F. App'x 968, 969 (9th Cir. 2003) (application filed over three-and-a-half years late); Plain v. AT&T Corp., 424 F. Supp. 2d 11, 16-17 (D.D.C. 2006) (two months late); Garcia v. Fortis Benefits Ins. Co., 2000 WL 92340, at *8 (E.D. Pa. Jan. 24, 2000) (one month late). Denial of untimely appeals of adverse LTD benefits decisions have also been upheld.  See, e.g., Holmes v. Proctor & Gamble Disability Benefit Plan, 228 F. App'x 377, 378-379 (5th Cir. 2007) (LTD benefits terminated for failure to file updated disability status report, appeal

---

[8]Monast conjures a number of hypothetical instances (for example, a doctor who is on vacation and unavailable to promptly fill out the requested forms) that do not apply to the facts of her case.

7

denied for failure by attorney to file timely appeal of benefits determination) (per curiam); Benson v. Bridgestone/Firestone, Inc., 2006 WL 984926, at *2 n.1 (10th Cir. Apr. 14, 2006) (suit barred because of a failure to exhaust administrative remedies where attorney error caused an untimely appeal); Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 227 (4th Cir. 2005) (same); Terry v. Bayer Corp., 145 F.3d 28, 40-41 (1st Cir. 1998) (finding denial of an appeal for untimeliness by plan Administrator not unreasonable).

Monast's initial application was timely and approved. Her required status update, however, was not. As this court has previously held in this case, "[a] termination of benefits for the failure to comply with the requirement that a claimant document her eligibility can hardly be termed 'arbitrary and capricious.'" Mem. and Order on Pl.'s Mot. to Compel, Sept. 14, 2009. A contrary holding would thwart the legislative intent of ERISA's drafters who sought to "promote the consistent treatment of benefit claims." Terry, 145 F.3d at 40. "Haphazard waiver of time limits would increase the probability of inconsistent results where one claimant is held to the limitation, and another is not." Id.

The strict enforcement of filing deadlines is not a practice alien to the court, which routinely strikes late-filed pleadings and defaults parties who neglect the deadlines imposed by its scheduling orders. This is not a case of a document thrown over the transom or slipped under the door at a minute past five. Monast's filing was 25 days late. The court can conceive of no principled basis on which it could say that 25 days late is forgivable, but not 90 days, or 45 days, or 26 days. If the court cannot imagine such a basis, it can hardly expect more of plan administrators.

Prejudicial Effect

Monast argues that federal "common law" requires defendants to show that they

suffered actual prejudice because of the late filing. Monast cites Nash v. Trs. of Boston Univ., 946 F.2d 960, 964 (1st Cir. 1991), for the proposition that "Federal Common Law governs in evaluating ERISA benefit Plan issues." Pl.'s Mem. in Supp. at 8. She also cites a decision of the Massachusetts Supreme Judicial Court, Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980), which interprets a state statute, Mass. Gen. Laws ch. 175, § 112, as requiring that "insurance companies [must] show actual prejudice caused by late notice" before denying a claim on grounds of tardiness. Pl.'s Mem. in Supp. at 8-11. Monast argues that the rationale of Johnson Controls is "still applicable herein as Federal Common Law or, at the very least, as an aid in evaluating whether Defendants' denial was arbitrary and capricious." Id. at 11.

Defendants counter that the notice-prejudice standard Monast cites is narrowly construed to apply only in a liability insurance context that is "ill-suited" to ERISA. Defs.' Opp. at 9. Another session of the district court has observed that "the fact that the state legislature has expressly limited the rule to liability insurers weighs heavily against extending the rule to disability insurers." Walley v. Agri-Mark Inc., 2002 WL 1796917, at *2 (D. Mass. 2002) (Zobel, J.). This court agrees with the reasoning of Walley and declines to read a notice-prejudice requirement into the ERISA statute.

Conflict of Interest

Monast alleges that a conflict of interest may have influenced the plan administrator's decision because Johnson & Johnson funds its own LTD benefits plan. Monast does not, however, allege how the conflict (if one exists), led to an arbitrary and capricious result in her case. The mere existence of a conflict, without more, is insufficient to establish that a benefits decision was compromised. See Metro. Life Ins. Co. v. Glenn,

128 S. Ct. 2343, 2351 (2008) ("[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one . . . . The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . ."). There are no such circumstances here.[9]

## ORDER

For the foregoing reasons, Monast's motion for summary judgment is DENIED. Defendants' motion for summary judgment is ALLOWED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[9]Plaintiff finally argues that she was never given a specific reason for the denial of her LTD benefits as required by the plan and by 29 C.F.R. § 2560.503(g). The court finds this argument somewhat errant. Monast's recitation of facts in the same pleading states, "[b]y letter dated 2/20/08, Reed Group advised Mrs. Monast that it had determined that she no longer was eligible to receive benefits under the LTD Plan and terminated her benefits effective 2/15/08 *because the Reed Group had not yet received the Attending Physician's Statement within 15 days of the Reed Group's request.*" Pl.'s Mem. in Supp. at ¶ 21 (emphasis added).